So our next case is 524-0826 in the matter of the estate of Kevin Lee Hohlbaugh, if I'm pronouncing that correctly. Please have a seat. Go right ahead. I'm sorry. So, Mr. Nolan? Yes, sir. Okay. And then for the appellees, I've got Mr. Holmes and Mr. Thomas, correct? Correct, sir. Are you all splitting time with argument, or? No, Mr. Holmes is straight out. Okay. I just want to make sure. We'll make sure we get everybody a chance. Yes, sir. So with all that, Mr. Nolan, are you ready to proceed? Yes, sir. Okay. Come right on up. We'll do it right again. May it please the court and counsel, I'm Corey Nolan, attorney for Ms. Amy Hohlbaugh in her capacity as the independent administrator of the estate of Kevin Lee Hohlbaugh. She is the plaintiff's appellant in this matter, and she is the widow of Kevin Hohlbaugh. Kevin Hohlbaugh was the son of Kenneth Hohlbaugh and Barbara Hohlbaugh. And for today's purposes, I'm going to refer to Amy as the appellant, Kevin as Kevin, Kenneth as Ken, and Barbara as Barbara. The matters being appealed today relate to a judgment and an order filed in the Wayne County, Illinois, Circuit Court, case number 2021-CH1, after a trial held on the appellant's complaint on November 20th and 21st, 2023. Appellant filed a two-count complaint seeking declaratory relief for both counts against the defendants, Kim, Barb, and KVK, LLC. KVK, LLC, is a member-managed limited liability company formed by Kim, Barb, and Kevin in 2001 by the filing of articles of organization with the Illinois Secretary of State. And I think it's very important for the justices to keep in mind when considering the issues in this case that the two-count complaint was a seeking declaratory relief for both counts, just a declaration of rights. Appellant's declaratory action centered around two issues. The first issue found in count one presented a question of whether Kevin had been properly disassociated as a member of KVK in accordance with 805 ILCS 180-35-45 of the Illinois Limited Liability Act by the unilateral filing of articles of amendment to articles of organization of KVK by Kim on June 18th, 2003, after Kim and Barb agreed to remove Kevin from his KVK membership. The second issue found in count two posed the question of whether an oil contract for deeds existed based on the part performance exception to the statute of frauds for commercial real estate located in Greenville, Illinois, buying between Kevin as the buyer and Kim and Barb as the sellers. On December 14th, the court entered its judgment as to count one. And as to count one, the court found that Kim and Barb's attempted disassociation of Kevin from his KVK membership interest by the unilateral filing of the articles of amendment to the articles of organization did not fall within the 14 very specific events that must occur to cause, one of those must occur in causing disassociation under the Illinois Limited Liability Act. The trial court went on to determine that in absence of an operating agreement, absence of disassociation provisions found in the Illinois Limited Liability Act, and contrary to other express provisions of the Illinois Limited Liability Act, the majority of the members of an LLC can disassociate another member. Now... Is that in keeping with Illinois law? No, it's not, Your Honor. Why not? I have not found any authority that shows that when there is not an operating agreement that anything outside of the statute of the Illinois Limited Liability Act itself applies in determining who can disassociate a member. And also I find I found no authority in my research to say that a majority of members can disassociate another member. The statute itself requires unanimous consent, consent of all the members, to amend the articles of organization. And even in the event that Kevin would have been stripped of his membership interest, he still would have been considered under the statute a transferee for purposes of distribution of income. The statute provides that he wouldn't have the rights as a member, but he'd still have his ownership interest. Well, I lost you on the last part. If they can't amend the articles of incorporation, how can he lose his status as a member? Well, so he can. But he cannot. The statute doesn't permit that. However, in this case, the court ruled that he was stripped. So even contrary to the provisions of the statute, the two members of a three-member LLC or a majority could strip a member. However, even in that event, the statute still provides he would be considered a transferee member. So you're saying that under the court's ruling, he would be considered a transferee member? That's correct. But you're not, you're advocating that they could not have affected his interest as a member of the LLC? That's correct, Your Honor. Okay. And this was a member-managed LLC? That's correct. So unanimous consent was required under the statute to affect any interest of the decedent? An amendment or express will by that member. Okay. The other thing the court did, which I found unusual, is the court interpreted the statute to say that death could not have been contemplated by the legislature as one of the factors. And it is. In those 14 provisions, death is one of the ways a member can be disassociated. Was there any discussion in the record as to why the court arrived at its interpretation of the statute? No, only in the court's judgment. Okay. There was no opportunity until after. So the court rendered its decision, and then an appellant filed a motion to vacate, and those issues were raised in that motion to vacate. But in the court's order denying the motion to vacate, there is nothing mentioned other than it was within the court's power to do so. Thank you. With respect to the – so going back to the crux of appellant's argument, so I think it's really important for the court to keep in mind the fact that this is, one, a declaratory action. So we're asking for declaratory relief, not adjudication of necessarily a legal matter, but a determination of whether or not Kevin had been properly disassociated pursuant to the disassociation statute of the Limited Liability Company Act. In the court going beyond and deciding that the majority of members of an LLC could essentially remove an LLC member and restrict that member of its LLC interest is in violation of the declaratory action statute. The further relief that's provided under that statute spawns from something that's declaratory in nature and not procedurally. It requires a party to file a petition to seek that further relief, which didn't happen here, and the party, the appellant, loses her right to plead and respond and to notice. Let me ask you another question, if I could. Of course. Was there any payment made to the decedent while he was alive from the LLC after the dissociation? There was. So, yes and no. So there wasn't payment directly from KVK to any of the members regarding the income. The income didn't flow through KVK itself. It was paid directly to its members. How were the tax returns filed then? Did they get K-1s to show their... They did not get any K-1s, Your Honor. So the LLC didn't file tax returns? It did not. The income was paid directly to the members. 1099s were issued by the tenant farmers to each member, and it was reported on the tax returns by those 1099s. So Ken and Barb can't show that they received KVK income versus their son receiving KVK income? In a sense, yes. So in the evidence admitted in the record, there are lease agreements with the farmers. Those lease agreements contain acreage that's owned specifically by KVK LLC, approximately 700 acres, and then also acreage owned in Ken and Barb's individual name. Kevin received a portion of that income, and Ken and Barb received another portion of that income. When you say the portion, is that from what was held in their names or in the LLC's name? Both. Okay. It was just a lump sum. As I recall, some of the leases were signed by Kenneth as president of the LLC, and that money went to their son, correct? That money went into a general pot. All the money went into one pot in a sense. So all the money went into one pot. Well, so it was all paid out directly to the three members, but Ken and Barb received their money in a singular payment for that year, and Kevin received his money, but it was all contained under that lease agreement. So the lease provided for the payments were both the KVK-owned acreage and the personal-owned acreage by Ken and Barb. So there would have been some evidence in the record that KVK transferred income to the son, Kenneth. Is it Kenneth? The son is Kevin. Kevin, I'm sorry. I want to make sure the record is clear. KVK transferred income to Kevin while he was alive, but after the dissociation attempt. So KVK was formed in 2001. The attempt at dissociation was in 2003. KVK didn't own any income-producing assets until 2012. From the date of first purchase of KVK real estate to the date of Kevin's passing, he received KVK income attributable to KVK assets continuously. So 2013 through 2012, 2014 through 2013, all the way until his date of death, he received payments directly from the farmers. And to your point, just to be clear, that was essentially roughly 10 years after the dissociation. That's correct. In addition to the court finding that none of the 14 factors were considered or that applied in this matter, the statute itself has a roadmap or a path that one can follow in terms of what other provisions apply. The court didn't apply any of those other statutes. Several, some of the other pertinent sections that the court, when it went beyond the deferral, after it determined that the dissociation section hadn't been complied with, the court found that, I apologize, the court erred when it determined that Kevin had been dissociated by the actions of Ken and Barb and holding that a majority of the members of an LLC can dissociate another member. Section 805, ILCS 180-51 provides that in the absence of the operating agreement, an LLC is a member-managed LLC. Subsection D provides that under a member-managed LLC, the amendments to articles of organization require consent of all the members. Section 180-35-55 provides that in the event a member is dissociated, the member is stripped of its membership interest and treated as a transferring member. And so here, even if Kevin was stripped of his membership interest, he still would have been a transferring member under purposes of the statute and still would have had ownership of his interest in KBK and still have been entitled to equal distributions of any assets from KBK until its dissolution. And so the court ignored all of those provisions of the LLC statute. And so again, for the court's error not to be corrected, appellant being denied ownership of one-third of KBK, you're talking one-third of 700 acres of farm real estate, that she would have no opportunity to get any equity that was just taken from her. And the damages that the court seemed to impose in its judgment was that her damages would be limited to when the attempted disassociation took place in 2003 when the LLC reportedly had no value. But the pleading that you filed didn't ask the court to go that far, did it? It did not. Was there an evidentiary hearing of any kind that allowed the court to arrive at all of these conclusions? No, Your Honor, other than the trial. So we have the trial, but outside of that, there was no. But the trial was on the declaratory judgment action. It was on both. So it was a declaratory judgment action for both count one and two, yes. Okay. So then, with respect, if there are no other questions, I'm going to move on to count two, the statute of the oral contract with the issue. Yeah, I have some questions about that building. I'm just wanting to say be mindful of your time, but obviously we'll allow all the questions to be answered. Thank you. Was there a roof repair made on that building? There was, Your Honor. And did Kevin pay for that roof repair, reimburse his parents for the roof repair? To a certain extent. So from an appellant's interpretation of the evidence in the record, Kevin received a loan, which his parents co-signed, and so much of the proceeds of that loan went towards repairing the roof on that building. Where did he get the loan from? People's State Bank out of Newton. Okay, not his parents. No. And then in the record, there is evidence that the loan documents are showing that. I believe it was approximately $60,000 that went towards the payment of the roof, and then Kevin was making payments on that loan until his date of death.  So to follow up with that, and I know you may have more questions, but I think that was one of the points that the opposing counsel brings up, is that if I read here, there was an agreement between Kevin and his parents to make 152 monthly payments, and they're alleging that the evidence showed he'd only made 22 of those between 2013 and 2016. Is that correct? So that is correct. However, I think this is where, again, we're getting a little ahead of ourselves in terms of what was pled and asked of the court and the relief that the court granted. So with the oral contract for deed issue, we were just asking for the determination of whether an oral contract for deed existed. The plaintiffs or defendants, they had blanket denial of any kind of agreement with their son. And so by the finding, there's no way that the appellant can defend herself or plead or say anything contrary to the fact that there was a breach when there's no knowledge of whether or not there was or was not an enforceable oral contract for deed. Certainly the parents never filed a lawsuit against Kevin for breach of contract. That's correct. They did not. And not only that, but again, their response to count two of plaintiff's complaint, appellant's complaint, was that there was no oral contract for deed. It didn't exist. And that's specifically what Plaintiff Trump was asking for in her relief, for the court to determine whether or not an oral contract for deed existed. And then that's where the, again, the declaratory action statute, you know, the relief granted from that doesn't permit the court to go on and determine whether or not the contract had been breached. Well, but the circumstances of the payment certainly would determine whether or not, not determine, but would be helpful in determining whether there was an equitable deed. Since you have no written deed, correct? That's correct. I mean, the situation of payments is an important factor in determining the equitable deed. That's correct. And here there are payments possibly attributable to the contract for deed, in that there was checks written from Kevin to his parents that had a month and a date on it, that also said mortgage in the memo line. Not only that, but the parents, Ken and Barb, on their tax return, there's a line item that says, Kevin Hobart, contract sale. And the amount of interest reported as income on that line item pairs up exactly to what the court found as terms to that oral contract for deed with the same interest rate, under the same principal amount, under the same payments for each year. So, again, there is, for the tax returns in the record for the payments, there is just three, for the most recent three years, but all of them have Kevin Hobart contract for sale with the appropriate amount of interest under the same terms that the court found the contract to have. Okay. Any other questions? No, not now. Do you have any questions? No questions. I'll let you, I mean, I'm not cutting you off, but you might want to, I'll give you just a minute to wrap up. With respect to that, again, the overreaching thing that, the argument that Tom is trying to make is that, is that, again, the court went beyond preferably decided issues that were not contained in the pleadings and that, you know, the moment it found a valid oral contract for deed triggered a whole host of other issues, legal issues, that were decided by the court, including protections by the Online Mortgage Foreclosure Act that provides for relief of a purchase for real estate in the event of default of a mortgage. But I will leave it with that and save the rest of my argument. And, obviously, you'll have your time for rebuttal. Yes. All right. Any other questions before we let counsel? No questions. All right. Thank you. Thank you. May it please the Court and counsel, I'm Brent Holmes from Heller Holmes & Associates, and Mr. Thomas and I represent Kenneth Hobart, Barbara Hobart, and KDK LLC. On the state of this record, it cannot be said that the trial court's decision is against the manifest weight of the evidence. KDK LLC was formed on May 18, 2001. On June 18, 2003, articles of amendment were filed with the Illinois Secretary of State in which it stated that Kevin was no longer a member of the LLC. At that time, the LLC had no assets. Now, whether Kevin was rightfully or wrongfully removed, his one-third interest at that time was zero. Kevin never contributed anything to the LLC. And in the ensuing 17 years, What was contributed by Barb and Ken? I'm sorry? What was contributed by the other members of the LLC? The LLC at the time of its formation and through 2003 had no assets, essentially no assets. So nobody contributed anything? No, no. And then about 9 to 10 years later, that is when Ken and Barbara contributed the 700 acres they owned to the KBK LLC. Now, if Kevin was still a member or considered himself a member, where was his one-third contribution? Well, your client, KBK, never filed a tax return as I understand it. Right? That is correct. So the capital contributions made by the members are reported nowhere. Is that true? That's correct. So what duty is there? Where is it in the LLC Act that says that because two members contribute to the capital contribution without an operating agreement, that there's a duty for the third member to contribute? Well, if there is no duty to contribute, then upon the dissolution of the LLC, the member who made no contributions should get nothing back. Well, what you say should and would and could, there's no operating agreement here. That is correct. So the LLC Act controls, right? That's correct. So now without, I guess there would be a dispute that would be filed in a court of law as to the capital contributions made by the various members upon dissolution as to how that would be apportioned. But you have to remember, you have to look at the record as a whole. There's no evidence in this record that Kevin didn't know that he had been removed as a member of the LLC or that he ever objected to his removal of the LLC. But there's no evidence that he did. Or that he ever considered himself a member of the LLC after June of 2003. Well, how can you say that when he received funds from the farm tenants that were from the KBK LLC? We don't know from this record. And it was the plaintiff's burden, not the defendant's burden. It's the plaintiff's burden to show clearly what amount of money from KBK did Kevin receive as opposed to farm income that his parents would have and would receive and entitled to receive. But they directed the farmers to assign that income to their son, which was consistent with what they had done throughout their life. When they had oil and gas leases in their name, they asked and directed the oil producer to pay the income to Kevin. So this was no different than what they'd done. Mr. Correll testified that was something that was discussed with him. We have Mark Ballard, an attorney, saying he set up a charitable unit trust so that Kevin, during his lifetime, would receive the income from the assets, but not the asset themselves. But the problem I have with this is that there's an indicia of ownership, if you will, because they were trying to take care of their son. I understand that. But their actions created an indicia of his ownership in the KBK LLC after they attempted to disassociate him. So there's this indicia of membership that's created by the record. No, I don't think so. Why not? Because you can interpret the record to the opposite, and that is he had no interest in the LLC. He never made any contributions to the LLC, which one would ordinarily expect. And there's no evidence, direct evidence, as to what amount of money, if any, from any KBK income was actually paid to him. He did receive 1099s. That's correct. He received it from farmland, and the evidence could be that that was from the farmland that Ken and Barbara owned individually, not from the KBK. But we don't know. We don't know, do we? We don't know, but that was the plaintiff's burden of proving, not for the defendant. Kevin brought forward the leases that were signed by the president, if you will, of KBK. Although I'm not sure that was the KBK. An LLC doesn't have a president. Right. But those significant, those leases are signed or they're listed as Barbara and Kenneth, as the members of the LLC. Kevin is not listed as a member of the LLC because he was no longer a member of the LLC, and they all understood that. Let's go there for a moment. This was a member-managed LLC, right? Right. So for them to cut Kenneth out would have required a consent unanimously by all the members under the LLC Act. Is that true? The articles of amendment filed on June 18, 2003, is prima facie evidence that the requisite requirement had been met. What evidence is there, if any, that Kevin consented? Is there a meeting, evidence? The prima facie evidence says in that document file that the requisite majority, and remember that Amy never raised in the trial court that unanimous consent was required. That issue was forfeited. She only argued that a majority was required. And the evidence is clear that a majority fit. And even if you said, well, maybe unanimous was required, the prima facie evidence on the filing of the articles of amendment would indicate that. And there was no evidence presented to rebut that prima facie case. Okay, but is there some case law that says upon the filing of the articles of amendment that it's prima facie evidence? Is there case law that says that? It would be the same thing as if filing a deed and it says the grantor conveys to the grantees. That's prima facie evidence of the fact of what the situation was at the time the article was filed. But then we have 10 years later, about 10 years later, we have conduct that seems to indicate that KBK is paying money to Kenneth. Kevin. Kevin, I'm sorry. Thank you. Kevin is paying money to Kevin. There is no evidence, no convincing evidence that KBK money was actually paid to Kevin. He got 10.99s from the farmers. And there's been no evidence that was presented as to what allocation, if any, was between the parents' ownership individually and KBK as an LLC. Do you need evidence of allocation if you just have evidence of payment? Right. I want to also point out a very significant point. This was a rocky marriage. These two people, this was a second marriage for each of them. They had been separated at least two or three times. At the time of Kevin's death, they were physically separated. And what difference does that make? And this is not a case. Is that in the record? I'm sorry? Is that evidence? Yes, it is in the record. But what difference does that make? Well, for instance, yes. Because again, we're saying. He seems to be the appointed administrator of this estate. Because we're saying, is this a case against the manifest way of the evidence of what Judge Shane ruled? And the answer is no. Because this is not a case where the widow picks up the baton to continue the efforts of Kevin to recover his interest or what he believed to be his interest in KBK. It's not at all. This is a case where the widow has picked up the baton, though. Isn't she the widow? And isn't she the administrator? She is. But if there was any indication that Kevin thought that he was no longer a member, consented to that, or that he objected to what had been done, or that he didn't think he was getting his share, surely there would have been something in the record to indicate some action on his behalf. That's why the statute of limitations and the laches also apply, and the court can affirm on any basis in the record. Five years after those articles of amendment are filed, he let the statute of limitations run. We also know that Judge Shane had pointed out. Excuse me. He let the statute of limitations run on what? Pardon? What did the statute of limitations run on? It would run on five years. On what cause of action? If there's no written operating agreement, then if you claim that there's been a breach of that oral operating agreement, then you have five years to file your action. Okay, but there's no conversation about an oral operating agreement that I see in the record. Is there? No, there isn't. So how does – I didn't understand the five-year argument. Because whether it was rightfully or wrongfully done, he was, in fact, as a matter of fact, disassociated in 2003, when this LOC had no assets. If he felt he was not disassociated because he was receiving money from the farm leases, why would he take any action? But there's no pleading in the record and no evidence in the record that Kevin did not consider himself to be disassociated or that he considered himself to still be a member of the – the record is totally silent in that regard. And in that case, it is incumbent upon the plaintiff to prove the discovery rule would apply to extend the filing or the statute of limitations. And there's been nothing filed with regard to the argument of laches being applied. And the court said – didn't have to reach that, but the court said in its decision that it would have been – it was – it might be a persuasive argument because there were no assets at the disassociation and before the bringing of the action 17 years later. And the remaining members in that interim, to their prejudice, contributed significant assets into this LOC. Do you agree with the court's finding that if the disassociation was improper, that the remedy would be damages as opposed to continued ownership? Oh, absolutely. Why? Because – and let me give you an example. Because you say, well, it wasn't within the 14 enumerated provisions. It was within the 14. Death was a basis for disassociation. But the dissolution – the disassociation occurred back in 2003. Okay. As a matter of fact.  As a matter of fact. So let's give – let me give you an example, a hypothetical. Let's say we're talking about Apple LLC. And we have a Steve Jobs and a Steve Wozniak who were working in their garage trying to build a computer. And then Ronald Wayne, who a lot of people don't know, Ronald Wayne came along. He contributed 10%. And 12 weeks later, he's now disassociated voluntarily in that case. He's paid $500. Let's assume in that case under those facts that the two Steves decide to change the coating on the garage door opener, change the locks on the door, and that Ron is no longer going to be permitted into the LLC and work. He's been disassociated as a matter of fact. He dies 17 years later. Can his estate then come in and say, well, by the way, he's still a member. He's got 10% interest. Write us a check for $50 billion. Thank you very much. No. As a matter of fact, he was, in fact, disassociated in 2003. But your hypothetical said under the job, the Apple hypothetical, you said he was voluntarily disassociated. So they took a positive action that's from the… I'm just saying that at the time that he took his 10%, he got $500. Right. If you change the facts in the hypothetical and say no, he didn't voluntarily disassociate. They locked him out. And from then on, he was not a member of the LLC as a matter of fact. I don't understand how two people can lock somebody out and the only remedy is the damages and not continued ownership. Because you look at what was in the assets of the LLC at the time that the disassociation occurred. Well, that means anybody could lock you out for little money. Pardon? Anybody could lock you out at a time you form the LLC. That's right. And then you could say, well, sure, then that person could say, okay, then I want my pro rata share based upon the LLC Act. And what are you going to get? You're going to get zero because that's all you put into the LLC. That's the point that you were disassociated. I would like to turn to the other issue with regard to real estate. And that is that the court got it correctly right. There were only 22 payments that were ever made with regard to the contract. And the sentence alleged that they made each and every payment up until the date of Kevin's death, which clearly wasn't the case. The court side of the Supreme Court case of Warder v. Cornell, if this case had come down yesterday, it's written with the same clarity that you would expect today. The only Supreme Court said courts of equity will not enforce the specific performance of a contract, which has become stale, but when the complainant himself is in default. And there's no question that Kevin was in default. He only made 22 payments. The last three and a half years of his life, he made no payments. Why didn't your clients file a cause of action against Kevin for default? Why would they do so? To foreclose. It was his son. To foreclose on the property. It was their son. And that's my point. They gave him an indicia of ownership because he was their son. Now, how the damages play out and all of that, I don't know that that's really before the court. You can't lose sight of the family dynamics here. That's their son. You wouldn't expect that they knew he was in default. Why would they sue him? As far as they were concerned, the contract was over with. He was still getting income because, again, it was consistent with their custom and practice throughout his adult life that they would assign income to him. But he was in default. And you have to remember, it's the plaintiff who's now coming into court saying, I want to enforce this contract. It's not enforceable because so many provisions under a contract for commercial billing extending over many years has so many provisions that are not in there. It cannot be enforceable. And the court correctly found it was not an enforceable contract. And in any event, he was in default because he didn't make the payments that he alleged or she alleged that he made in the complaint. And she totally failed in that broken proof because he never did make those payments. He made 22, and that was it. I see my time's up. I know you've been at it for a long time this morning. Unless there are any other questions, I'll move quickly. All right. Thank you. Thank you. Mr. Bowe. Thank you, Your Honors. Just quickly, in response to the defendant Pelley's argument that Ken and Mark personally transferred 700 acres of real estate to KBK is a false assertion. In the record, in the pleadings, they filed an affidavit attached to that affidavit contains the deeds of record for all of the acres owned by KBK LLC, which shows KBK as the grantee and numerous third parties as the grantors with consideration paid. There is no evidence in the record anywhere showing who contributed what interest to, specifically in terms of capital, to KBK. Again, that assertion is misleading. In addition to that, with respect to the statute, the LLC statute itself, again, they keep taking this, the defendants, and the court takes this position that if he's disassociated or removed in 2003, that strips him not only of the membership interest, but also the transferee interest. Those are two separate interests under the LLC. You can be stripped or you can have your, in certain cases, your membership interest wrongfully removed, but you still have that transferee interest, which is your ownership interest, what entitles you to distributions. And in the event of no operating agreement, those distributions in the winding of the company are in equal shares as provided by the LLC. There's statutes specifically on that point. And with respect to the contractor deed issue, again, they keep saying that the appellant, Plinkton, my client, came and asked the court to enforce a contract. We did not ask the court to enforce any contract. We asked the court to declare the existence of a contract that they denied from inception of Plankton's complaint. There was no, how could she enforce a contract that didn't exist without some kind of adjudication that it did? And that's what we asked the court to do, and that's what the court did. And then it went on and enforced the contract, the terms of it, on its own accord. It decided the legal issues for a declaratory action. And then with respect to the Articles of Amendment, they keep using that as a basis for their prima facie evidence that Kevin was removed. However, again, the Articles of Amendment, with respect to the Illinois Minimum Liability Act, they're just a, what would be considered a way to publicly memorialize just happenings within the company. It's purely an administrative statute. There's nothing binding. The actual binding provisions of the Illinois Minimum Liability Act are the dissociation, 14 ways that a member can be dissociated. And then you would agree that public filing like that could be prima facie evidence of a change to the LOC. I mean, that's what the public filing is for, right? I would agree to that, but I don't agree that Then the burden shifts to you to show something that refutes that. That's correct. And so here, you know, there is no operating agreement, and the statute itself provides that it takes unanimous consent. So just because they said that memorialization of that doesn't effectuate the actual removal of Kevin as a member. It doesn't strip him of his interest. And even if it did, he is still a transferee until the KVK winds up and it's dissolved, which it never did. I mean, to this date, KVK is still an entity, and he, my client, would still be considered the transferee by succession, his surviving heir. Well, it would be the estate. It would be the estate, that's correct. And she, my client, is the sole heir of that estate. But otherwise, that's all that I have. I don't know if I will be able to answer any more questions. Any further questions? No, thank you. Mrs. Moore. Thank you, Counsel. Thank you. Obviously, we will take matters under advisement. We will issue an order in due course.